|102  529|
|112  581|

BECKER, CLARK & STONE v. WILLIAM CALDERWOOD, Appellant.

**Sale:** WARRANTY: *Action for price.* Plaintiff advised defendant, a farmer, who wished a wind-mill, to buy one made by a third party, and gave him a circular, issued by such third party, guaranteeing that it would not wreck in any storm that did not destroy the building  Defendant thereafter agreed to buy a wind-mill of that kind.  When plaintiff began to set it up on defendant's farm, he gave him a circular, issued by the maker, requiring certain questions to be answered by a purchaser before a signed guaranty of the wind-mill would be issued. These questions defendant refused to answer, and also refused to accept the mill, or pay for it, unless guaranteed as stated in the first circular. *Held,* that an action for the price would not be sustained.

SAME. Plaintiffs sold machinery as their own by contract providing that the purchaser should have the maker's guaranty, and on delivering it gave the purchaser a letter from the maker accompanying it, and told him, "there is a letter with the questions you will have to answer before you can get a warranty. *Held.* that this was an attempt by plaintiff to impose on the contract new conditions, which, it will be assumed, were the only terms on which they could give the maker's guaranty.

*Appeal from Scott District Caurt.*—HON. C. M. WATERMAN, Judge.

SATURDAY, DECEMBER 12, 1896.

ACTION on a contract of sale and an account for labor performed. The following statement of facts by appellant is conceded, with a slight modification, to be correct; and, as the case presents a legal question based thereon, we give it: "Appellees, during the year 1894, were engaged in the business of drilling wells and selling and setting up windmills. Their office was in Le Claire, Iowa. Early in May, 1894, appellant, a farmer, living near Le Claire, called upon Becker, Clark & Stone, desiring to buy a windmill. Mr.

Becker recommended a mill called the 'Aermoter,' and during the conversation handed Calderwood a circular, issued by the Aermoter Company, manufacturers of the Aermoter, and stated to him that he knew this firm to be a reliable firm, that anything they guaranteed,—anything they said they would do in that circular,—they would do. Becker told Calderwood to take the circular home and read it. Among other things stated in this circular was the following: 'We guarantee the aermoter and tower not to wreck in any storm that does not destroy buildings, and we also guarantee that our eight-foot wheel is the full equal of any wooden ten-foot wheel. * * *' Mr. Calderwood took the circular home and read it, and about the middle of May, 1894, he went back to Becker's office and ordered an eight-foot aermoter and sixty-foot steel tilting tower, agreeing to pay one hundred and seven dollars for same, appellees to set up the mill on his farm, he to pay thirty cents per hour for the time consumed by appellees in setting it up. About June 1, 1895, appellees brought the aermoter and tower to appellant's farm, and began setting it up. That night Clark (one of the appellees) handed Calderwood a circular letter, which he said had come with the mill. This letter read as follows: 'To the Purchaser: If you wish to obtain a signed guaranty on this outfit, fill out this blank in full and return immediately. If the outfit is properly erected, we will forward you a guaranty under the official signature and seal of the Aermoter Company. If everything has not been properly done, we will make it our business to see that it is attended to at once. No guaranty after this date (Feby. 15, 1894) on our goods is official, which does not bear the signature and seal of the Aermoter Company. To obtain such guaranty all the information asked for below must be forwarded within thirty days after the outfit is erected. [Signed] Aermoter Co., 12th and Rockwell Sts., Chicago, Ills.' Then follows a list of questions, among

which is the following: 'Is the aermoter fifteen feet above surrounding wind obstructions within 400 feet? This question Mr. Calderwood must have answered in the negative, if at all. Next morning he said to Mr. Clark: 'I don't want that mill. I can't answer those questions, and I don't want you to put the mill up.' Mr. Calderwood then wrote to the Aermoter Company, and they answered his, in substance, that they would not give any warranty upon the mill unless it was erected fifteen feet above surrounding wind obstructions. Mr. Calderwood refused to accept the mill, or to pay for it, unless it was warranted by the manufacturers as stated in the circular hereinbefore referred to, and notified Becker, Clark & Stone to remove it from his farm, and, upon their failure so to do, he took down the mill and stored it. They sued for agreed price of mill and six dollars additional for labor in setting it up. Appellant counter-claimed, as shown in the answer and counter-claim. Upon the close of defendant's evidence, the court directed the jury to return a verdict for plaintiff, in accordance with such direction, for the amount claimed. Judgment was afterwards rendered upon said verdict, from which defendant has appealed."—*Reversed*.

*Cook & Dodge* for appellant.

*Becker & Thuenen* for appellee.

Granger, J. —The only modification of the statement suggested by appellees is that the agreement to erect the mill was not a part of the contract of purchase; but we think it appears from the record, without dispute, that the contract of purchase included that of erecting the mill for a compensation stated. It is to be understood that the sale was made by the plaintiff on the guaranty of the Aermoter Company. Appellees

present the question for consideration as follows: "The only question in this case is whether, at the time Calderwood attempted to rescind the contract of purchase, he was the owner of the windmill in question under such a warranty as the circular given him by Becker promised." Appellees then present their contention in these words: "Appellees contend that the statement in the circular constituted the warranty, and nothing in said circular contained could be construed to mean that the Aermoter Company would give any other kind of a warranty with its mill than such as was contained in the circular." It is said to be appellees' thought that as the Aermoter Company has issued its circular, with the terms of its warranty, and that appellant had made his contract upon the terms of the warranty in the circular, the sale became conclusive between the parties to it, regardless of whether the Aermoter Company will comply or not. In other words, that, if the company now seeks to impose new conditions, it can in no way affect appellees. It is doubtlessly true that no new conditions could be imposed after the contract was complete, which we understand to be when the mill was ordered. But is there an attempt to impose new conditions? As we understand, appellant only asked that the guaranty contained in the circular be signed or become binding on the company. But appellees contend that the circular itself was, in legal effect, a proposition to any person desiring to purchase, and that the purchase from appellees was an acceptance of the proposition of guaranty by the company, and bound it so that the contract of guaranty became complete. The mill in question was a windmill, and wind was to be the motive power. The contract of guaranty is silent as to how it was to be placed in order that it might be operated by the wind and in the way it was guaranteed to operate. It cannot properly be said that the company made its guaranty regardless of the place where the mill might be set. Let

us suppose the company, instead of plaintiffs, had made the contract with Calderwood, and given the same guaranty, with nothing said as to conditions that should surround the mill to make it accessible to the wind. It is a matter of common knowledge that there must be some degree of favorable conditions. The company would be presumed to know the conditions on which it designed to place its guaranty in this respect. A purchaser would not be so presumed. Now, if the company had come to place the mill, and found the conditions not as they should be so that it could give the guaranty, could it deny the guaranty, and still enforce the contract of sale? If not, why? Because the guaranty was a part of the contract of sale, and the denial of the guaranty is not because of a default on the part of the purchaser, but because the company, in making its contract, did not take notice or inform itself of the conditions under which it must perform, and withheld from the purchaser such conditions, so that he had no knowledge of them. A right of the company to recover under such circumstances would not be claimed. How does the case differ as to the plaintiffs? They purchased the mill on their own account, and then sold it to the defendant, using the guaranty in question, and making it a part of its contract. They stood as the company would, if it had made the sale, in the respect of placing the mill so that it might meet the test of the guaranty. The abstract discloses that there was to be a period of thirty days in which to make the test, and, if not satisfactory, the mill could be returned, and the company would pay the freight both ways. This provision is a part of the contract between these parties. If plaintiff's contention is correct, they had the right to place the mill, without regard to the conditions under which the guaranty would attach, demand and receive their pay, and leave the defendant to a remedy against the company. We think that, when the plaintiffs

assumed to use the circular containing the proposed guaranty, as to matters not expressed therein, and which were essential to its proper use, they stood as would the company itself in using it; that is, they will be presumed to have the knowledge of the company in such respects, and be subject to the same rule as to right of recovery. ˙The misapprehension is in the thought that the defendant is seeking a change in the terms of the guaranty. He is not. His contract was for a mill on his farm to which the guaranty would apply. Plaintiffs engaged to erect the mill, and when they have so performed that the guaranty attaches, then their claim will be more tenable, for then there will be contractual relations between the company and defendant. Until that time there is no such relation. We are not referred to, nor are we able to find a case with similar facts. The judgment is REVERSED.

## Supplemental Opinion on Re-hearing.

## Friday, May 28, 1897.

Per Curiam.—In a petition for re-hearing it is urged that we have misapprehended the facts, and hence the law, of the case, in that it appears that defendant refused to accept the mill because the Aermoter Company, after the purchase, tendered the defendant "a specific written guaranty on certain conditions." which the defendant declined to accept, and it is urged that such conditions could not affect the plaintiff. The court directed a verdict for the plaintiff, and hence we must presume all facts as true, favorable to the defendant, that had substantial support in the evidence; and, applying that rule, it appears that when plaintiff came to deliver the mill it brought a letter from the Aermoter Company containing the "conditions" referred to in the petition for re-hearing, and Mr. Clark,

of the plaintiff firm, handed it to the defendant with the statement, "There is a letter with the questions you will have to answer before you can get a warranty." The letter came with the mill to the plaintiff, and the plaintiff delivered it to the defendant as containing the conditions on which the guaranty, which was a part of the contract of sale, would attach. It was as much as to say, "The guaranty we gave you from the Aermoter Company will not attach unless you conform to the requirements of the letter." The entire dealing was with the plaintiff firm. The firm was selling its own property, and in a way to carry with it the guaranty of the Aermoter Company. It must do that on the terms that the company would permit it to be done, under its agreement with the plaintiff. The agreement between the Aermoter Company and the plaintiff as to the guaranty must be assumed to be as the plaintiff attempted to give it effect by presenting the new conditions. It is clearly a mistaken idea that there was ever a contract between the Aermoter Company and the defendant. The plaintiff had not observed the terms that would create such a contract. It is to be further said that the pleadings present no issue except that plaintiff refused to give the guaranty as it had agreed. The petition for a re-hearing is OVERRULED.